IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ROXIE M. PENNINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:20-cv-434-JTA |
| | ) | (WO) |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), the claimant, Roxie Marie Nelson Pennington ("Pennington"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Pennington's claim for a Period of Disability, Disability Insurance Benefits ("DIB"), Disabled Widow's Benefits ("DWB"), and Supplemental Security Income ("SSI"). (*Id.*) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 9, 10.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.   PROCEDURAL HISTORY AND FACTS

Pennington was born on October 22, 1966 and was 52 years old at the time of the administrative hearing held on May 29, 2019.  (R. 39.)[2]  Her highest level of educational attainment was ninth grade, and her past work has been primarily unskilled work—namely, she has worked as a housekeeper, a cashier, and a prep cook.  (R. 39.)  Pennington alleges a disability onset date of April 1, 2016,[3] due to ruptured disks in her back, disk degeneration, high blood pressure and diabetes.  (R. 104.)

On August 9, 2016, Pennington applied for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.).  (R. 16.)  On the same day, Pennington also protectively filed a Title II application for DWB.  (*Id.*)  On September 19, 2016, Pennington filed an application for SSI under Title XVI (42 U.S.C. § 1389, *et seq*.).  (*Id.*)  Each of these claims was initially denied on October 14, 2016. (R. 134-139.)   Pennington subsequently requested an administrative hearing on December 16, 2016.  (R. 151.)[4]  The hearing was held on May 29, 2019.  (R. 37.)  The Administrative Law Judge ("ALJ") returned an unfavorable decision on July 17, 2019 (R. 16-27), and Pennington filed a Request for

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (Doc. No. 14.)

[3] Pennington initially alleged a disability onset date of December 30, 2015, but the onset date was amended to April 1, 2016, during the administrative hearing.  (R. 16, 39-43, 105.)

[4] On January 18, 2017, the Commissioner published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844.  As part of the final rules, the Commissioner rescinded Social Security Ruling ("SSR") 96-5p. *See* 82 Fed. Reg. at 5845; 82 Fed. Reg. 15,2663 (Mar. 27, 2017).  The final rules and recission of SSR 96-5p apply only to claims filed on or after March 27, 2017.  Because Pennington applied for benefits before March 2017, 20 C.F.R. §§ 404.1520(a) and 416.972(a) apply to her case.

Review of Hearing Decision (R. 8).   On April 24, 2020, the Appeals Council denied Pennington's request for review (R. 8-11), and the hearing decision became the final decision of the Commissioner.[5]   On June 19, 2020, Pennington filed the instant action seeking review of the Commissioner's final decision.  (Doc. No. 1.)

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).   Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004);

---

[5] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

*Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."   42 U.S.C. § 405(g).   The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.   STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB, SSI, and DWB must prove that she is disabled.  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920; 20 C.F.R. § 404.335(c).[6]  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

---

[6] Although DIB, DWB, and SSI are separate programs, the standard for determining disability are identical.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

Disability under the Act is determined by a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  (*Id*.)  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis.  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  The ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that

the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

As to DWB, under the Social Security Act, the widow of a fully insured individual is entitled to benefits if she establishes that she is at least 50, but less than 60 years of age, and is disabled.  *Miles v. Soc. Sec. Admin., Comm'r,* 469 F. App'x 743, 744 (11th Cir. 2012) (citing 20 C.F.R. § 404.335(c)).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Pennington meets the insured status requirements of the Social Security Act through December 31, 2020.  (R. 19.)  Additionally, because Pennington is the unmarried widow of a deceased insured worker and has attained the age of 50, the ALJ found that Pennington has met the non-disability requirements for DWB set forth in section 202(e) of the Social Security Act.  (*Id.*)  The ALJ determined that the prescribed period would end on September 30, 2020, that Pennington has not engaged in substantial gainful activity since

her alleged onset date of disability, and although she worked after the alleged disability onset date, this work activity did not rise to the level of substantial gainful activity.[7]  (*Id.*)

The ALJ found that Pennington suffers from the following severe impairments: degenerative disc disease of the lumbar spine, history of multiple hernias, right hand arthritis, chronic obstructive pulmonary disease ("COPD"), right foot bone spurs, hypertension, obesity, depression, and anxiety.  (R. 19.)  The ALJ concluded, however, that Pennington's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.*)

After consideration of the entire record, the ALJ determined that Pennington retains the RFC to perform light work[8] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but not a "full range" of such work.  (R. 21-25.)  The ALJ found the following workplace limitations applicable to Pennington:

> She is limited to occasional climbing ramps and stairs, no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; frequent handling with the right upper extremity; avoid concentrated exposure to pulmonary irritants including fumes, odors, dusts, and gasses; no direct exposure to hazardous conditions, including unprotected heights, dangerous machinery, or uneven surfaces; unskilled work activity defined as simple routine tasks involving no more than simple, short instructions, and simple work-related decisions with few workplace changes.

---

[7] Pennington testified that she worked as a self-employed housekeeper after the alleged onset date of disability.  (R. 40-42.)  A review of her earning history shows that Pennington earned $12,647 in 2016 and under $11,866 in 2017.  (*Id.*)

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

(R. 21.)

Based upon the testimony of the Vocational Expert ("VE"), the ALJ determined that Pennington was precluded from performing any of her past relevant work. (R. 25.) The ALJ also concluded that Pennington was not disabled as defined by the Act because her age, education, work experience, and RFC would allow her to make a "successful adjustment to other work that exists in significant numbers in the national economy." (R. 26-27.) The ALJ further concluded that Pennington had not been under a disability from April 1, 2016, through July 17, 2019, the date of the ALJ's decision. (R. 27.) The ALJ found that based on the application for a period of disability and DIB filed on August 9. 2016, Pennington is not disabled under sections 216(i) and 223(d) of the Social Security Act; based on the application for DWB protectively filed on August 9, 2016, Pennington is not disabled under sections 202(e) and 223(d) of the Social Security Act; and finally, based on the application for SSI filed on September 19, 2016, Pennington is not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## V.    DISCUSSION

Pennington presents four arguments on appeal. First, Pennington argues that the ALJ improperly relied on her lack of treatment to discredit her pain and other symptoms without proper consideration of her poverty. (Doc. No. 12 at 1.)    Second, Pennington contends that the ALJ failed to properly consider the medical opinion of Dr. Syed A. Ahmed. (*Id.*) Third, Pennington asserts that the ALJ's finding of her RFC is not based on substantial evidence. (*Id.*) Fourth, Pennington argues that the ALJ did not meet his fifth step burden. (*Id.*) The Court addresses each of Pennington's arguments in turn.

1.      Pain

Pennington contends that the ALJ did not give appropriate weight to her testimony regarding her pain and other symptoms.  Specifically, Pennington argues that the ALJ's finding that she does not meet the second prong of the pain standard set forth in *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991) is not supported by substantial evidence. (Doc. No. 12 at 5-6.)  She also asserts that the ALJ improperly denied disability due to her noncompliance with medical treatment which was "purely financial."  (Doc. No. 12 at 7.)

The Social Security Administration has issued guidelines for evaluating pain and other symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL1119029, at *2.  Under these regulations, statements about pain and other symptoms will not alone establish disability, rather, medical signs or laboratory findings must show that there is medical impairment that could reasonably be expected to produce the pain, or the other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a).  Once the objective evidence demonstrates the existence of such a medical impairment, the agency will consider the subjective allegations of pain and other symptoms along with the other evidence.  *Id*.  If the evidence documents an impairment that could reasonably be expected to produce the symptoms alleged by the claimant, the Commissioner then evaluates the intensity and persistence of the symptoms to assess how they limit the claimant's capacity for work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When determining whether a claimant is disabled, the ALJ considers "all [ ] symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R.

§ 404.1529(a).  "A claimant may establish that she has a disability through her 'own testimony of pain or other subjective symptoms.'"  *Tredik v. Comm'r of Soc. Sec.*, 826 F. App'x 840, 848-49 (11th Cir. 2020) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  To establish disability based on pain, a claimant "must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt*, 921 F.2d at 1223); *see also Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019).  "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.

If it is determined that a claimant has an impairment that could be reasonably expected to produce pain, the ALJ must then evaluate "the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [her] capacity for work."  20 C.F.R. § 404.1529(c)(1).  During this evaluation, the ALJ will "consider all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [ ] symptoms affect [the claimant]."  *Id.*  "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."  *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021) (quoting *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  The ALJ must adequately articulate his reasons if he discredits subjective testimony.  *Marbury*, 957 F.2d at 839; *Dyer*, 395 F.3d at 1210.  The ALJ "need

not cite 'particular phrases or formulations[,]'" but he is required to cite enough to "enable [the court] to conclude that [he] considered [the claimant's] medical condition as a whole." *Chatham*, 764 F. App'x at 868 (*quoting Dyer*, 395 F.3d at 1210).   When evaluating subjective symptoms, the ALJ must consider factors which include a claimant's daily activities; location, duration, frequency, and intensity of a claimant's pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain; any measures a claimant uses to relieve the pain; and other factors concerning functional limitations and restrictions due to pain.   20 C.F.R. § 404.1529(c)(3)(i)-(vii).   "The fact a claimant can perform daily activities that are inconsistent with her subjective symptom complaints does not constitute substantial evidence where there is other evidence indicating her daily activities have been significantly affected by her condition." *Hollingsworth*, 846 F. App'x at 752  (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)); *see also Tredik*, 826 F. App'x at 849.  That being said, "a claimant's activities may show her pain or other symptoms are not as limiting as alleged." *Hollingsworth*, 846 F. App'x at 752  (citing 20 C.F.R. § 404.1529(c)(3)(i).  Still, credibility determinations are the province of the ALJ, and "we will not disturb a clearly articulated credibility finding supported by substantial evidence." *Tredik*, 826 F. App'x at 849 (citing *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 792 (11th Cir. 2014)).

Here, the ALJ's assessment of Pennington's pain and other symptoms is supported by substantial evidence.  First, the ALJ considered the appropriate factors when he was assessing her subjective pain.  He considered Pennington's daily activities, her statements regarding her physical limitations in her Function Report, her testimony during the

administrative hearing, her complaint that her daily pain averages six on a scale of one to ten, her reports to her medical providers, the results from x-rays and CT scans completed by her medical providers, the treatment administered by her providers, and the suggestions given to her by medical providers.  (R. 22-25.)  None of these considerations employed by the ALJ were inappropriate based on relevant case law and regulations.  *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *see also Robinson v. Acting Comm'r of Soc. Sec.*, 766 F. App'x 811, 816-17 (11th Cir. 2019).  The Court finds no reversible error.

Pennington's argument that the ALJ improperly denied disability due to her noncompliance with medical treatment which was caused by her poverty is unavailing. The Eleventh Circuit has "held that 'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,' and 'poverty excuses noncompliance.'" *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (quoting *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988)).  "[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Id.*   Here, nowhere in the ALJ's decision is noncompliance discussed as the <u>sole</u> ground for denial of disability benefits.  Rather, the ALJ states that, <u>in addition</u> to the evidence not being able to support Pennington's allegations of physical and mental health limitations, outside of frequent hernia treatment, there is no evidence that shows that she received frequent treatment from a specialist.  (R. 25.)  Accordingly, the Court finds no reversible error on this issue.

2.    Medical Opinion of Dr. Ahmed

Pennington argues that the ALJ's failure to consider the opinion of her examining pulmonologist, Syed Ahmed, M.D. ("Dr. Ahmed"), calls into question the ALJ's findings. (Doc. No. 12 at 9.)  Pennington further contends that the ALJ's boiler plate language that all evidence was considered is insufficient.  (*Id*.)  The Commissioner responds that Dr. Ahmed's temporary recommendation based on a consultative pulmonary examination to which Pennington refers is not a medical opinion.  (Doc. No. 13 at 10.)  The Commissioner alternatively argues that the ALJ's failure to address Dr. Ahmed's opinion was harmless. (*Id*. at 11.)

Pennington presented to Dr. Ahmed in May of 2018 at the Wellstar West Georgia Medical Center for a pulmonary consultation due to hypotension.  (R. 1134.)  The medical notes from Dr. Ahmed establish that he diagnosed Pennington with, *inter alia,* hypotension, hypothyroidism, and "suspected" obstructive sleep apnea.  (R. 1134.)  Dr. Ahmed noted that Pennington was "high risk" for obstructive sleep apnea and advised her to follow up with her primary care physician.  (R. 1134.)  After informing Dr. Ahmed that she could not afford "CPAP/oxygen at this time[,]" Dr. Ahmed made the following notes in his evaluation report:

> Patient understands [obstructive sleep apnea] is important because if left untreated it can lead to significant morbidity and even earlier mortality. It can cause day-time fatigue and sleepiness that can increase the risk of trouble concentrating, falling asleep at undesired times, and even automobile accidents… Patient understands not to drive, use heavy machinery, or swim until [obstructive sleep apnea] is ruled out and treated.

(R. 1134.)[9]   In his analysis of the entire medical record, the ALJ does not make any reference to Dr. Ahmed's opinion or the restrictions from his opinion.

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Treatment notes from acceptable medical sources that include a description of the claimant's symptoms, a diagnosis, and a judgment about the severity of her impairments are medical opinions.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (emphasis added).  When evaluating a medical source, the factors to be considered by an ALJ include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization.  *See* 20 C.F.R. § 404.1527(a)(2).[10]

---

[9] Pennington's attorney mentioned Pennington's obstructive sleep apnea ("OSA") during the administrative hearing and indicated that she does not have a continuous positive airway pressure ("CPAP") machine.  (R. 40.)

[10] "An ALJ must give a treating physician's opinion substantial weight, unless good cause is shown."  *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' " *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).  Dr. Ahmed examined Pennington one time and thus was not a treating physician whose opinion the ALJ was

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).   An ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); 20 C.F.R. § 404.1527(a)(2).   "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).   When an ALJ fails to "state with at least some measure of clarity the grounds for his decision," the court will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Winschel*, 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).   The Eleventh Circuit has held that "[i]n such a situation, 'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " *Winschel*, 631 F.3d at 1179 (quoting *Cowart*, 662 F.2d at 735).   Thus, failure to state with particularity the weight given to different medical opinions and the reasons therefore constitutes reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   Nevertheless, the Court is not required to reverse an ALJ's decision when the ALJ's error does not affect the ultimate

---

required to accord substantial weight absent good cause shown. *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician").

findings.  *Tillman v. Comm'r, Soc. Sec. Adm.*, 559 F. App'x 975, 975 (11th Cir. 2014) ("Ordinarily, an ALJ's failure to explain the particular weight given to the different medical opinions provided is reversible error.  However, when the ALJ's error did not affect its ultimate findings, the error is harmless.");  *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.") (citation omitted).

Further, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [or her] decision, so long as the ALJ's decision . . . is not a broad rejection" that leaves the district court with insufficient information to conclude whether the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1211.  The question before the court is whether substantial evidence in the record supports the ALJ's opinion as a whole.  *Id.*  (citation omitted).

Here, the Court finds that the ALJ's failure to address Dr. Ahmed's opinion[11] is harmless.  Although the ALJ did not explicitly identify Dr. Ahmed by name in his opinion nor detail his treatment notes in assessing Pennington's RFC, the ALJ discussed the treatment Pennington received at Wellstar West Georgia Medical Center in May 2018 for hypotension.  Specifically, the ALJ stated:

> The evidence shows [Pennington's] blood pressure waxed and waned and she experienced periods of hypotension.  In May 2018, she experienced hypotension with dizziness after her antihypertensive medications were

---

[11] Contrary to the Commissioner's assertion, Dr. Ahmed's notes are "medical opinions."  *See Winschel*, 631 F.3d at 1178–79.

> intentionally withheld by treating physicians while she received antibiotic
> therapy.  However, after receiving intravenous (IV) fluid resuscitation, her
> blood pressure improved and her presenting problems resolved.  In addition,
> a cardiac work-up was negative (Exhibits B11F and B18F).

(R. 22.)  The Court is able to conclude from the ALJ's detailed analysis of Pennington's

medical records that he did not broadly reject Dr. Ahmed's medical opinion, but rather

considered Pennington's medical conditions as a whole.

Pennington's argument that remand is warranted because the ALJ did not consider

Dr. Ahmed's opinion is not well-taken as the ALJ is not required to refer to every piece of

evidence in his decision.  *See Dyer*, 395 F.3d at 1211.  Furthermore, Pennington does not

show how the ALJ's failure to state the weight accorded to Dr. Ahmed's opinion would

have affected the ALJ's ultimate determination.  *Tillman*, 559 F. App'x at 975; *Hunter*,

609 F. App'x at 558.  The ALJ found that Pennington had the RFC to perform light work

but was limited to certain functional limitations which included avoiding dangerous

machinery.  (R. 21.)  This restriction is similar to Dr. Ahmed's suggestion that Pennington

not use heavy machinery.  (R. 1134.)  Though Dr. Ahmed also suggested that Pennington

not drive or swim, there is no evidence before the Court which establishes that omission of

those restrictions would affect the ALJ's ultimate determination or change the ALJ's

decision in any way.  *See Wright* v. *Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per

curiam) ("Although the ALJ did not explicitly state what weight he afforded the [medical]

opinions. . . none of [the] opinions directly contradicted the ALJ's findings, and, therefore,

any error regarding their opinions is harmless.  That is, while each of these doctors found

that [the claimant] suffered from chronic pain or conditions associated with chronic pain,

not one of these doctors indicated that [he] is unable to perform sedentary work as a result of that pain.") (internal citation omitted).   Accordingly, the Court finds that the ALJ's failure to explicitly address Dr. Ahmed's opinion does not warrant reversal.

    3.    RFC

Pennington argues the ALJ's RFC is not based on substantial evidence because the ALJ did not consider Dr. Ahmed's opinion that she has been restricted from driving, using heaving machinery, or swimming.  (Doc. No. 12 at 11.)  The Court finds this argument to be unavailing.

The determination of RFC is within the authority of the ALJ and the assessment should be based upon all the relevant evidence of the claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1527(d). The ALJ has full responsibility to determine a claimant's RFC. *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); 20 C.F.R. § 404.1520(a)(4)(iv).   The ALJ does not have to order a consultative examination or medical expert testimony unless the record contains insufficient evidence from which the ALJ can make an informed decision. *Doughty*, 245 F.3d at 1281 (11th Cir. 2001); 20 C.F.R. § 404.1519a(b).  Social Security Ruling 96-8p requires a "function-by-function" assessment.  SSR 96-8p.  The ALJ can satisfy this requirement by discussing the claimant's medical record and citing a regulation that defines the exertional demands of the claimant's RFC. *Williams v. Astrue*, No. 2:11-CV-2782-KOB, 2012 WL 4329301, at *2 (N.D. Ala. Sep. 19, 2012) (citing *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007)).

Because the Court finds that the ALJ's failure to explicitly address Dr. Ahmed's opinion is harmless, it pretermits discussion of Pennington's argument that the ALJ's RFC finding is not based on substantial evidence due to his failure to include driving, using heavy machinery or swimming.  The Court finds the ALJ fashioned an appropriate RFC based on the medical record and substantial evidence supports his RFC findings.

4.      Fifth Step Burden

Pennington argues that the ALJ did not meet his fifth step burden that she can perform jobs that exist in significant numbers in the national economy.  (Doc. No. 12 at 13-15.)  She contends "there is an apparent conflict between the VE's testimony and the jobs of a garment sorter and inspector."  (*Id.* at 14.)  Pennington contends both jobs of garment sorter and inspector have a general education development[12] reasoning level of two[13] under the Department of Labor publication, Dictionary of Occupational Titles ("DOT"), which contradicts the ALJ's restriction that she is limited to "simple routine tasks involving no more than simple, short instructions and simple work-related decisions."  (*Id.*) (quoting R. 21).  The Commissioner responds that Dunn's argument fails under current Eleventh Circuit precedent holding that simple, routine and repetitive tasks are not inconsistent with level two reasoning.  (Doc. No. 13 at 4 (citing *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005 (11th Cir. 2020)).

---

[12] "The DOT assigns a general education development ["GED"] reasoning level to each position." *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020).

[13] The Commissioner does not dispute the GED reasoning levels of these positions as stated by Pennington.

At step five of the sequential evaluation, the Commissioner bears the burden of proving that the claimant can perform other work available in the national economy after considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278 n.2. An "ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227. The ALJ has two resources to help him determine whether the claimant has the ability to adjust to other work in the national economy—the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.01, or the testimony of a VE. *Watson v. Astrue*, 376 F. App'x 953, 956 (11th Cir. 2010). "[A]n ALJ has an affirmative duty to identify and resolve apparent conflicts between a [VE's] testimony and information in the DOT." *Valdez*, 808 F. App'x at 1009.

Here, the ALJ found that Pennington had the RFC to perform light work which was limited to "unskilled work activity defined as simple routine tasks involving no more than simple, short instructions and simple work-related decisions . . . ." (R. 21.) The ALJ obtained the testimony of a VE who testified that an individual with Pennington's age, education, work experience, and RFC would be able to perform the occupations of garment sorter, inspector and parts crimper. (R. 26.)

Pennington's assertion fails. In *Valdez*, the Eleventh Circuit held that "simple, routine and repetitive work" can be performed by workers with a reasoning level of one or two. *Valdez*, 808 F. App'x at 1009. The Circuit has also found "[t]here [is] no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning." *Peterson v. Comm'r of Soc. Sec.*, No.

21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021).  Because the ALJ found Pennington could complete the jobs of garment sorter and inspector which require DOT level two reasoning, and these jobs[14] are not inconsistent with her RFC, the Court finds no reversible error.

## VI.   CONCLUSION

After review of the administrative record, and considering all of Pennington's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 17th day of March, 2022.

_Jerusha T. Adams_
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

---

[14] It is unnecessary to address Pennington's challenge to the parts crimper job as the ALJ determined that she could perform two other jobs which are not inconsistent with her RFC.